ARCHER v. LONG.

1. ANSWER—ALLEGATIONS OF OWNERSHIP.—In action against a sheriff, to
   recover the possession of personal property claimed by plaintiffs, an alle-
   gation in the answer, that the defendant levied upon and seized this prop-
   erty under execution "as the property of M., the execution defendant, the
   said property being found in the possession of the said M., and claimed as
   his own," sufficiently alleges, *it seems,* the ownership of M.
2. SHERIFF—CLAIM AND DELIVERY—DENIAL OF TITLE.—In action of claim
   and delivery, the complaint alleged title in plaintiffs and a wrongful taking
   by defendant. The defendant denied these allegations, and alleged that
   he had taken the property under executions against M., who was in pos-
   session and claimed it as his own. *Held,* that defendant could controvert
   the plaintiffs' title as void for fraud or illegality, without affirmatively so
   charging in his answer.

3. EVIDENCE NOT OBJECTED TO.—When evidence tending to show fraud is received without objection, it cannot be afterwards excepted to.

4. EVIDENCE—TIME OF INTRODUCTION.—An account book proved on the cross-examination of plaintiffs' witness, may be, at that stage of the case, received in evidence on defendant's motion.

5. IBID.—FRAUD.—On an issue of a fraudulent transaction between two persons, an account book, kept by one of them relating to their business dealings, is admissible in evidence—especially so when not objected to.

6. GIFT—DECLARATIONS OF DONOR.—Voluntary donees stand in no better position than their donor, and it is, therefore, doubtful whether the donor's statements after the transfer would not be admissible in evidence against his donees in favor of third persons.

7. EVIDENCE—DECEASED PERSONS.—Such statement made to a stranger who is not a party to the cause, is certainly not inadmissible by reason of the donor's decease.

8. ASSIGNMENT FOR CREDITORS.—There was no error in charging the jury, that if they believed that a debtor was insolvent, and intended, by the instruments which he executed, to transfer all of his available property to one of his creditors in preference of all others, then the transaction would be void under the assignment act—all questions of fact having been left to the jury.

Before WALLACE, J., Union, October, 1890.

Action by Sarah J. Archer and others against J. G. Long, sheriff. A. G. Means, witness for plaintiffs, being cross-examined by defendant's counsel, testified that the book in his hand was an account kept by himself and in part by Mr. Beaty, and showed his business dealings with Mr. Beaty. Two pages of this book were then introduced by defendant, plaintiffs' counsel saying, "No objection at all."

Verdict was for defendant, and plaintiffs appealed.

*Mr. J. S. Cothran*, for appellant.

*Messrs. Carlisle & Hydrick*, contra.

February 15, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. This being the second appeal in this case, it will not be necessary to make so full a statement of the general nature of the case as would, otherwise, be proper; but a reference to the former appeal, as reported in

18—38

32 S. C., 171, will be sufficient. The defendant having again obtained a verdict, the plaintiffs again appeal, upon very numerous grounds, thirty-six in number; but as some of them present questions already adjudicated under the former appeal, others are mere repetitions of the same points, and others are presented in a form too general to require consideration, while others are so manifestly untenable as to require no special notice, we will not undertake to consider these grounds *seriatim*, but will confine ourselves to the several questions discussed in the argument of counsel for appellants. These questions are: *First.* Whether there was error in submitting to the jury any question which might have arisen between A. G. Means and Robert Beaty, under the assignment act and under the statute of Elizabeth, inasmuch as defendant did not (as it is claimed) put such question in issue by his answer. *Second.* Whether there was error "in allowing the defendant, on cross-examination of plaintiffs' witness, A. G. Means, to put in testimony the account book of Robert Beaty, sr., deceased, and by proof through him of handwriting, to put in testimony the entries in said account book." *Third.* Whether there was error in receiving the evidence of Thomas Hart as to the declarations of Robert Beaty, sr., deceased, relative to the papers executed to him by A. G. Means, and by said Beaty transferred to the children of said Means. *Fourth.* Whether "the Circuit Judge erred in treating this case throughout as being within the terms and provisions of the assignment act."

Before entering into any discussion of the first question, it will, perhaps, be well to recall some of the undisputed facts of the case, and to ascertain precisely the exact state of the pleadings. A. G. Means, being very largely indebted to various persons (but whether to the extent of insolvency or not, was one of the issues of fact in the case), on the 30th of December, 1887, executed to his father-in-law, Robert Beaty, sr., a mortgage on certain real estate held by him in Spartanburg County, and at the same time gave to said Beaty a confession of judgment covering all his real estate in Union County, together with a bill of sale of the personal property in controversy in this case, embracing all the personal property owned by A. G.

Means, except some choses in action, of which a very indefinite account is given in his testimony. On the same day all these papers—mortgage, confession of judgment, and bill of sale—were assigned by Robert Beaty, sr., to the plaintiffs herein, who were his grand-children, and the children of A. G. Means. The consideration of these papers was alleged to be certain large claims held by Robert Beaty, sr., against A. G. Means. At the next ensuing term of the court, certain creditors of A. G. Means, other than Robert Beaty, sr., recovered judgments against said Means, under which the property in question was levied upon by the defendant as sheriff of Union County. It is conceded that said property all the while remained in the possession of A. G. Means, where it was found by the sheriff when he levied, but the claim on the part of the plaintiffs is, that Means retained the possession thereof, under a contract of hiring, after the same had been transferred to them, as above stated.

Soon after the property was thus levied upon, this action of claim and delivery was commenced by the plaintiffs against the defendant as sheriff. In their complaint they allege: 1st. That they are the owners of the property specifically mentioned, and are entitled to the immediate possession thereof. 2d. "That on the 12th July, 1888, at the plantation of Albert G. Means, sr., in the County of Union, the defendant wrongfully, and without authority of law, and in violation of law, levied on said property, under and by virtue of sundry executions against the property of said Albert G. Means, sr., for debt, and wrongfully took the said property from the possession of the plaintiffs, and still unjustly and wrongfully detains the same," &c. To this complaint, defendant answered: 1st. Denying the allegations contained in paragraphs one and two of the complaint. 2d. "Further answering, this defendant says that, on the 12th July, 1888, at the plantation of A. G. Means, sr., in Union County, this defendant, under and by virtue of executions against the property of the said A. G. Means, duly issued and directed to this defendant (in certain cases named), did levy upon and seize the property mentioned in the complaint as the property of the said A. G. Means, sr.,

the judgment debtor in said executions named, the said property being found in the possession of the said A. G. Means, sr., and claimed as his own."

The first point raised by the appellants seems to rest upon the assumption that there is no allegation in the answer that the property in question belonged to A. G. Means; but it seems to us that such an assumption is not well founded. When the defendant alleged, in his answer, that he levied upon and seized the property mentioned in the complaint *"as the property of the said A. G. Means, sr.,* the judgment debtor in said executions named, *the said property being found in the possession of the said A. G. Means, sr., and claimed as his own,"* it seems to us that the ownership of said Means was sufficiently alleged, at least for the purposes of this case.

But, even if this be not so, we think that there was no error in receiving evidence tending to show that the transactions under which plaintiffs claim to have acquired their title to the property were void under the assignment act or under the statute of Elizabeth (*Paris* v. *Dupre*, 17 S. C., 282), without any allegations in the answer of fraud in such transactions. Indeed, in this case, in the absence of any allegations in the complaint as to the source from which the plaintiffs claimed to have acquired their title to the property in dispute, the defendant had no right to assume that plaintiffs claimed through the judgment debtor, A. G. Means, and hence any allegation of fraud on the part of Means would have been wholly out of place. Surely, in such a case, the defendant would not be bound, and could not even be expected, to allege specific objections to a title which the complaint does not disclose, and of which he may not have had any knowledge until it was disclosed by the evidence at the trial. When under a general allegation of title the plaintiff undertakes to establish such title by introducing a conveyance from an admitted former owner, surely the defendant may be permitted to show, without any allegation to that effect in his answer, that such conveyance is a nullity—void for fraud or any other reason. The issue in such a case is, whether the

plaintiff has title, and it is entirely competent for the defendant to introduce evidence tending to invalidate for fraud, or any other cause, any muniment of title offered by the plaintiff.

Prior to the adoption of the Code of Procedure, it was a well recognized practice for a judgment creditor to treat as a nullity any alleged conveyance or transfer made by his judgment debtor prior to the recovery of judgment, on the ground of fraud in such conveyance or transfer, and levy upon and sell such property as still the property of the judgment debtor, and in any subsequent controversy for the possession of such property, such fraud could be proved without any allegation to that effect. See *Lowry* v. *Pinson*, 2 Bail., 324; *Thomas & Ashby* v. *Jeter*, 1 Hill, 380; *Smith* v. *Culbertson*, 9 Rich., 106; *Richardson* v. *Rhodus*, 14 *Id.*, 95—in reference to real estate. *DeMillen* v. *McAlliley*, 2 McMull., 499; *Motte* v. *Aiken*, 2 Speer, 113; and *Ford* v. *Aiken*, 4 Rich., 121—in reference to personal property. And that this practice has been recognized since the Code, may be seen by reference to *Amaker* v. *New*, 33 S. C., 28. See, also, the case of *Lyles* v. *Bolles*, 8 S. C., 258, which was an action against the defendant as sheriff for neglecting to take a trover bond, as ordered by the clerk. The defence was a general denial. The plaintiff, amongst other things, offered evidence of a judgment in the action of trover rendered *at chambers*. Defendant moved for a non-suit, upon the ground that no judgment in the action of trover had been proved; his position being that there was no authority for the rendition of such a judgment *at chambers*. To which plaintiff replied that the objection to the judgment offered could not be raised under the general denial. But the court held that the proof of a valid judgment was necessary to enable the plaintiff to recover, and that defendant might, under a general denial, assail the validity of the judgment; laying down the rule substantially as follows: that while, under the general denial, evidence of a distinct affirmative defence is not admissible, yet, in such a case, the defendant may introduce any evidence which goes to controvert the fact which the plaintiff is bound to establish, in order to sustain his action, and to disprove the case as made by him.

Upon the same principle it seems to us clear that, under the

general denial, the defendant was at liberty to offer evidence to assail the validity of the transactions between A. G. Means and Robert Beaty, sr., through which the plaintiffs sought to establish their claim to the property in dispute. If in Lyles *v.* Bolles the defendant was permitted to assail the validity of the judgment for want of jurisdiction, we see no reason why the defendant here should not have been permitted to assail the validity of the transfer of the property in question for fraud. The evidence in question was not offered to establish any affirmative defence, but simply for the purpose of controverting the title sought to be established by the plaintiffs. It seems to be assumed in appellants' argument that, under the pleadings, this is a case in which plaintiffs are suing to regain the possession of property wrongfully taken from their possession by the defendant, under a claim that it belongs to a third person, and that his defence is, therefore, affirmative in its character; but this is a mistake, for it will be observed that all the allegations in the complaint to this effect are not only denied, but it is distinctly alleged that the property levied upon was found in the possession of A. G. Means, who claimed it as his own, and who, according to the testimony, gave a bond for its delivery to the sheriff, though the plaintiffs, after the commencement of this action, "took the usual and legal steps for the immediate delivery of the property, and gave their replevin bond in usual form for that purpose, and took possession of said property," as is stated in the "Case." But, besides all that we have said, we are unable to discover that any objection was made at the trial to the evidence tending to show fraud, and, therefore, even if the objection were well founded, we think it comes too late.

The second question, which we propose now to consider, grows out of the first ground of appeal, which, as there stated, leaves us in some doubt as to whether the intention was to question the propriety of receiving the evidence there referred to, at the time and in the form in which it was offered—during the progress of the cross-examination—or to raise the question as to its admissibility at all. If the former was the object, then the cases of *Owens* v. *Gentry*, 30 S. C., 490,

and *Willoughby* v. *Railroad Company*, 32 *Id.*, 410, conclusively show that the objection is untenable. But if the latter, then the objection is equally untenable. In questions of fraud, much latitude is allowed in investigating transactions between the parties charged. See *Butler* v. *Watkins*, 13 Wall., 456, and cases there cited. It seems to us, that the evidence objected to was well calculated to throw light upon the intention of the parties, and was, therefore, admissible. But, in addition to this, it appears at fol. 152 of the "Case," that the only two pages of the account book which were offered in evidence, were received without objection.

The third question relates to the admissibility of the testimony of Thomas Hart, who was allowed to prove the declarations of Robert Beaty, made after he had transferred the property in question to the plaintiffs, and *post litem motam.* Inasmuch as the transfer to the plaintiffs was purely voluntary, and without any valuable consideration whatsoever, they cannot claim any of the immunities which might be accorded to purchasers. They can stand in no better position than their voluntary donor; and as it is clear that such testimony would be admissible, if Beaty were a party to the action, it is, to say the least of it, doubtful whether it is not likewise admissible against his voluntary donees. But, as we do not consider that the objection was in such a way as to require our decision of the question, we do not propose to do so. When the witness Hart was asked as to what Beaty said in reference to the execution of the papers above referred to by Means, and of his transfer of the same to the plaintiffs, the counsel for plaintiffs objected, "on the ground that the declarations of a deceased party with regard to a transaction with a person who is absent and living, is incompetent," when the court ruled as follows: "I do not think that would be a sufficient ground to exclude it." Whereupon counsel for plaintiffs excepted. The witness was then asked to state what he heard Beaty say; to which he replied, that he "could explain it more fully by bringing in some other conversation before this occurred. I reckon it would be more satisfactory. He had a note on Rice & Rawls at the time Mr. Means

came there." Whereupon counsel objected, without stating the ground; and as the "Case" does not show that the court made any ruling at all upon this objection, but does show that the witness said nothing further as to the note of Rice & Rawls, but proceeded, without further objection, to relate what he heard Beaty say in regard to the transaction, we must assume that the last objection interposed was directed to the statement of anything further in regard to the Rice & Rawls note; but as nothing further as to that note was stated, there was no necessity for any ruling by the court, and none was made.

So that we must conclude that the only ruling made by the court, and the only one which we are called upon to review, was whether the testimony of Hart was inadmissible, under section 400 of the Code. The objection based upon that ground is so manifestly untenable, that it was not urged by appellants in their argument here. But even if the testimony had been improperly received, it does seem to us that it would afford a very slender ground, if any at all, for granting a new trial, for it only amounted to the expression of an apprehension on the part of Beaty that he may have done wrong in signing the papers, and a fear that it might involve his son-in-law Means in a lawsuit. He neither said nor intimated anything tending to show that there was any fraud in the transaction, and we do not see that the testimony could have affected the verdict. But, at all events, the only ruling by the court below which we can review, is that the testimony in question was not rendered incompetent by anything contained in section 400 of the Code, and that ruling was unquestionably correct.

The point raised by the fourth question assumes that the Circuit Judge treated the case throughout as being within the terms and provisions of the assignment act, and claims that he erred in so doing. In the first place, we think the assumption is totally without foundation. After a very careful examination of the charge of the Circuit Judge, we are unable to discover that he said anything which would warrant such an assumption. On the contrary, what he said upon this subject amounted to this: if the jury believed that

Means was insolvent, and that he intended to transfer all of his available property to one of his creditors, in preference of all others, by means of the mortgage, confession of judgment, and bill of sale, then the transaction would be void under the assignment act, just the same as if he had made a formal deed of assignment. This was unquestionably correct law, as settled by the case of *Wilks* v. *Walker*, 22 S. C., 108, and the other cases cited in the argument, following that decision down to *Putney* v. *Friesleben*, 32 S. C., 492. In *Meinhard* v. *Strickland*, 29 S. C., 491, where this court undertook to review all the cases upon this subject down to that time, and to show that they were all entirely consistent, it is said: "It is plain, then, that, in cases of this kind, the question is mainly one of fact as to the *intention* of the parties. If the instruments employed were *bona fide* intended merely as security, and not as a means of evading the provisions of the assignment act, then they do not fall within the purview of that act. But if, on the contrary, the instruments resorted to, *whatever may be their form*, were intended, not merely as security, but as a means of transferring the debtor's property to the favored creditor, to the exclusion of others, with a view to evade the provisions of the assignment act, then they must be regarded as null and void, under the provisions of that act." And the same doctrine was explicitly recognized in the subsequent case of *Putney* v. *Friesleben*, *supra*, the last utterance of this court upon the subject. It seems to us that his honor, Judge Wallace, fully recognized this doctrine, and based so much of his charge as related to this branch of the case upon it, leaving the question of fact as to insolvency and intent fully and fairly to the jury. He did not, and could not, without deciding these questions of fact, have treated the case as falling within the provisions of the assignment act, and he certainly did not even intimate his opinion as to either of these questions of fact, much less undertake to decide them, but left them entirely to the jury. It seems to us, therefore, that, if appellants have any complaint at all, it is certainly not against the charge of the Circuit Judge, but against the findings of fact by the jury, over which this court has no control in a law case.

The judgment of the court is, that the judgment of the Circuit Court be affirmed.